# Wheeling.

SMITH & ATKINSON v. KNIGHT, SHERIFF, &C.

Decided April 19, 1879.

1. All judgments, where there has been no appearence by the defendant, are judgments by default, within the meaning of the act, Code, ch. 134, §§3, 5, 6, pp. 637, 638. And a proceeding by notice, although not a technical judgment by default at common law, falls within the equity, and was intended to be embraced within the scope of these provisions of the Code.

2. Where the defendant has not appeared and made defense to a motion, upon a notice, against him and his sureties, and judgment is rendered against him by the court at the instance of the plaintiff; and the record of the judgment erroneously states: "this day came the parties by their attorneys, and neither party requiring a jury, all matters of law and fact are submitted to the court," it is not error for the court, upon the motion of the defendant at the same term to set aside the judgment. And the court may do so *ex mero motu*.

3. The defendant's only ground for a continuance, and also ground of defense is an order, made by the county court at a term set apart *exclusively* for police and fiscal affairs of the county, except business within the general jurisdiction, which said order stayed the execution of the *fi. fa.* in his hands as sheriff; plaintiff claims that said order is a nullity, and therefore not ground for continuance or defense. HELD:

  That as a ground of continuance it was addressed to the sound discretion of the judge under the circumstances; and as the legality and effect of the order entered into the merits of the case, and had not been determined by the court below, the case not having been submitted on the merits by the parties to the court in lieu of a jury, the Appellate Court will not now consider the question on the merits.

Appeal from a judgment of the circuit court of Greenbrier county, rendered on the 17th day of November, 1875, in a suit at law in said court then pending, wherein Smith & Atkinson were plaintiffs, and James Knight, sheriff, was defendant, allowed on the petition of R. M. Smith.

Hon. Homer A. Holt, judge of the eighth judicial circuit, rendered the judgment appealed from.

MOORE, JUDGE, furnishes the following statement of the case:

Robert M. Smith, merchant, trading under the firm and style of Smith & Atkinson, on the 11th day of August, 1875, filed in the clerk's office of the circuit court of Greenbrier county a notice against James Knight as sheriff of said county, and Alexander Knight, jr., Andrew Knight, G. W. Carpenter, Beverly W. McMillion, F. H. Ludington, G. W. Williams, J. M. Ocheltree, Samuel C. Ludington, Wallace S. Rader, Robert J. Glendy, Madison Callison and Garland Brown, sureties of said James M. Knight on his official bonds as such sheriff, of a motion to be made by him against said sheriff and sureties, at the next term of said circuit court, for a judgment against them for the amount of debt, interest and costs due upon a judgment of the county court of said county, in favor of Smith & Atkinson v. James K. Hinkle and Andrew A. Hinkle, for $333.28, to be discharged by the payment of $166.64 with interest thereon from the 15th day of July, 1860, till paid, and the costs, upon the ground that said sheriff received from the clerk's office of said county court, before the return day thereof, a writ of *fieri facias*, dated July 4, 1873, issued upon the judgment aforesaid and for the full amount thereof, to be executed by him as such sheriff; and which writ said sheriff failed to execute according to its command and the provisions of law; and that another *fi. fa.* dated October 11, 1873,

returnable first Monday in December, 1873, was issued
from said office upon said judgment, and placed in said sheriff's hand, before the return day thereof, to be executed by him as such sheriff. which was levied by him on ten head of yearling cattle, one grey mare, and one bay mare, October 17, 1873, but the said sheriff failed to sell said property so levied upon, or otherwise execute said writ; and, also, that a writ of *venditioni exponas,* dated March 15, 1875, returnable first Monday in May, 1875, was issued from the same office upon said judgments, commanding said sheriff to expose to sale the property so levied on, which *writ* was placed in his hands before the return day thereof, to be executed by him, but that he failed to do so; and also that a *fi. fa.* dated May 13, 1875, returnable first Monday in July, 1875, was issued from the same office upon said judgment, and placed in the hands of said sheriff, before its return day, to be executed, which he has failed to execute according to his duty, and that said judgment is unsatisfied. Said notice purports, by an endorsement thereon, to have been accepted by said sheriff on behalf of himself and his sureties August 11, 1875.

On the 8th day of November, 1875, the record of said circuit court shows, the parties came by their attorneys, and neither party requiring a jury, all matters of law and fact were submitted to the court, and the evidence adduced being heard, the court gave judgment against the sheriff for the sum of $326.60, with interest thereon from the date thereof until paid, and the costs of proceedings.

At the same term, November 17, 1875, the parties appeared again by their attorneys, and on motions of the said sheriff the court set aside the judgment of November 8, 1875, and continued the cause until the next term, to' which actions of the court the plaintiff took a bill of exceptions, from which it appears, that Knight, the sheriff, did not appear at the trial of the cause Novem-

ber 8, 1875; that the court proceeded to hear the evidence produced by the plaintiff, no evidence being offered by defendant, Knight; that the plaintiff introduced in evidence a judgment, of which the following is a certified copy:

"At a county court, held for the county of Greenbrier, at the court house thereof, on the 27th day of November, 1860.

"ROBERT M. SMITH, MERCHANT, TRADING UNDER THE STYLE AND FIRM OF SMITH & ATKINSON, PLAINTIFF, AGAINST ANDREW A. HINKLE, AND JAMES K. HINKLE, DEFENDANTS.—*On Debt Bond.*

"Notice proved, and judgment for $333.28, to be discharged by the payment of $166.64, with legal interest thereon from the 15th day of July, 1860, till paid, and the costs.

"A copy from the record.

"Teste:                         MARK L. SPOTTS,
                                 "*Clerk County Court.*"

Plaintiff then introduced the five executions issued from said county court clerk's office, upon said judgment, dated respectively, July 4, 1873; October 11, 1873; March 9, 1874; March 13, 1875, and May 15, 1875, and the sheriff's endorsements thereon; that of July 5, endorsed: "No property found except what is levied on by previous executions and taxes"—that of October 11, endorsed: "Levied on ten head of yearling cattle, one grey mare, one bay mare, on the 17th day of October, 1873. Not sold by reason of the defendant, James K. Hinkle, producing a receipt against the within execution;" that of March 9, endorsed: "Stayed by order of court, made the 9th day of March, 1874;" that of March 13, has no return upon it; that of May 15, endorsed: "Levied, May 22, 1875, on nine head of yearling cattle, four cows, one grey mare, and one bay mare. Not sold by reason of restraining order of the county court, made on the 2d day of July, 1875." Plaintiff also introduced

in evidence two orders of the county court: the first, made upon motion of James K. Hinkle, a defendant in said executions, to quash the execution issued March 9, 1874, on the ground that it had been paid, and by which order said county court stayed all proceedings on said execution until said motion could be heard and determined.

The plaintiffs excepted to the ruling of the court in making the said order, as their bill of exceptions discloses, because proven that one of the justices composing the court, before whom said motion was made, was a brother-in-law of said James K. Hinkle, and the plaintiff had objected to the hearing of said motion by the court while said justice was one of the members composing the court; but the court decided the motion, in disregard to said objection, while said justice was sitting as a member of the court. The court was composed of the president "and two acting justices beside, and no other justices than those acted upon said motion." And, that "it was further proved that the counsel for the plaintiffs in the execution said: if the defendants would proceed to try the whole case upon its merits, he would withdraw all objections to Justice Lipps on account of his relationship; but the defendants were not ready to try upon the merits, and Justice Lipps would not sit and try the case any further than to hear the motion to suspend or stay the proceedings temporarily on the execution; and it was further proved that no other justice could be had, and the court was about to adjourn for the term." The second order was made the 8th day of March, 1875, on said motion to quash, by which the former order is declared set aside, and the sheriff directed to proceed upon said execution. In the case against the sheriff, it was proven that he was the qualified and acting sheriff to whom the writs were directed, that he had received the same and made the said endorsements thereon as sheriff; and this being all the evidence then before the court, the said judgment of November 8, 1875, was entered.

On the 17th of November, 1875, at the same term of the circuit court, upon said sheriff's motion to set aside the judgment against him, and continue the cause, he testified that there was now in existence an order of said county court made July 2, 1875, restraining him from the collection of the debt in said executions mentioned, a certified copy of which order states: "It appearing to the court that an execution is in the hands of James Knight, S. G. C., in favor of Robert M. Smith against James H. Hinkle, dated 13th day of May, 1875, for $166.64, with interest thereon from the 15th day of July, 1860, and $7.58 costs, which has been levied on nine head of yearling cattle, and four calves, and one bay mare, and one grey mare by said sheriff, and the said Hinkle alleging that he has paid said debt in full to Andrew Beard, former sheriff of said county, who had an execution in his hands on this same debt: It is, therefore, ordered that all proceedings be stayed on said execution until the further order of this court, and until an opportunity is given to said Hinkle to move the court to quash said execution upon the ground that it has been paid."

Knight also testfied that property had been levied upon by him more than sufficient to pay said debt; that nine head of cattle, levied upon under the execution dated 13th May, 1875, had been sold by the consent of said Knight, at private sale, by James K. Hinkle, for $270.00, which sum had been paid into bank to the credit of said Knight, subject to a refunding receipt, given by said Knight to said Hinkle requiring said Knight to return said money, provided Hinkle would get an order of court releasing him from the payment of said debt, and that he, said Knight, had two horses and other property levied upon to satisfy said debt, which had not yet been sold." On cross-examination said Knight further testified that "he now had no grounds for continuing the case, and no other excuse for delaying the collection

of said debt except the existence of said last restraining order of the county court."

The plaintiff then introduced in evidence, an order of the county court of January 1, 1874, deciding what terms of said court are held for the consideration of police and fiscal concerns of the county; which designated the January and July terms for that purpose; but the order declares that it "shall not be so construed as to prevent the court from transacting, at any term, such business as may be within its general jurisdiction, provided that no claim shall be allowed, and no assessment or levy upon the property of the county shall be made except at the terms set apart for police and fiscal affairs aforesaid."

This being all the evidence before the court, it was ordered that the said judgment of November 8, 1875, be set aside, and the case continued until the next term. The plaintiff in error, R. M. Smith, alleges that the court erred, both in setting aside the said judgment and granting the continuance.

*A. C. Snyder*, for plaintiff in error, cited the following authorities:

Acts 1872-3, ch. 219, §2; Const., Art. VIII, §23; 3 How. 750; 3 H. & M. 565; 4 Leigh 612; 7 Leigh 63; 10 Iowa 380; Acts 1872–3, ch. 124, §17; 11 How. 437; 19 Gratt. 592; 2 H. & M. 139; 30 Ill. 189; 4 Rand. 192; 9 Conn. 140; 6 Ired. L. 191; 38 Ala. 315; 13 Pa. St. 60; 21 Wend. 351; 6 Humph. 385; 10 Humph. 316; 11 Ga. 297; 30 Ga. 664; 26 Ga. 437; 4 Bibb 332; 5 Metc. 517: 2 Watts & S. 60; *Id.* 220; 4 Humph. 209; *Id.* 267; 15 Gratt. 64, 72; Code, ch. 41, §30; 10 Gratt. 629; 9 Gratt. 64; 17 Gratt. 445; 6 W. Va. 1.

*R. F. Dennis*, for defendant in error, relied on the following authorities:

1 Rob. (old) Prac., ch. 134, §5; 17 Gratt. 627½; 43 Pa. St. 456; 3 Munf. 81; 17 Ala. 566; 2 Watts & S. 210; 7 N. H. 382; 16 N. H. 22; 3 H. & M. 565; 2 Math.

1879
Special Term.

Smith & Atkinson
v.
Knight, Sheriff.

Dig. 733; 1 Pat. & H. 289; 20 Miss. 544; 40 Vt. 157; 10 Gratt. 228; 2 Wash. 194; 1 Call 243.

MOORE, JUDGE, delivered the opinion of Court :

The 5th section of chapter 134, Code p. 637, provides: "The court in which there is a judgment by default, or a decree on a bill taken for confessed, or the judge of said court in the vacation thereof, may on motion reverse such judgment or decree for any error for which an Appellate Court might reverse it, if the following section was not enacted, and give such judgment or decree as ought to be given."

Section 6, referred to in the foregoing section directs that : "No appeal, writ of error, or supersedeas shall be allowed or entertained by an Appellate Court or judge for any matter for which a judgment or decree is liable to be reversed or amended, on motion as aforesaid, by the court which rendered it, or the judge thereof, until such motion be made and overruled in whole or in part."

In the case of *Davis, sheriff* v. *Commonwealth*, 16 Gratt. 134, a notice at the instance of the Commonwealth was given to the sheriff and his securities in his official bond, that a motion would be made for a judgment against them for a balance of license taxes. The notice having been duly proved on the day specified, the defendants were called but came not, and at the instance of the attorney general the motion was docketed and continued to a future day of the same term; and, at the like instance, it was continued to other days named until February 21, 1860, when on motion of the Attorney General it was continued until the then next regular term of said court for the trial of civil causes. On a subsequent day of the the same term, February 25, 1860, the last order of continuance was set aside at the instance of the attorney general, and on his motion the court proceeded to render a judgment against the sheriff and his sureties; to which judgment a *supersedeas* was awarded by the Court

of Appeals of Virginia, upon the application of the sheriff. That court held, under the provisions of statutes, from which the said 5th and 6th sections of our statute were copied *verbatim :* "that this must be considered as a judgment by default in the meaning of the law, and that the *supersedeas* should not have been allowed until a motion had been made to the court in which the judgment was entered or the judge of said court in vacation thereof, and overruled. And that the supersedeas having been improperly allowed should be dismissed."

Judge Allen, who delivered the opinion of the court in that case, said, "it seems to me that although not a technical judgment by default at common law, a proceeding by notice falls within the equity, and was intended to be embraced within the scope of these provisions of the Code. * * * * In dealing with the subject of errors and amendments the Legislature must have had in contemplation all modes of procedure by which judgments were to be rendered. The statutes in relation to this subject of jeofails are remedial and should receive a liberal construction. We have seen that the Legislature has been gradually extending the power of the court rendering a judgment, or the judge in vacation to correct mere clerical errors and reverse judgments for errors in the proceedings at rules, &c., to which the attention of the court had not been called. Thus the revised Code authorized the amending of judgments for illegal orders at rules or in case of any variance between the writ and declaration. And the Code, still extending the remedy, gives to the court which renders the judgment, or to a judge in vacation, authority to reverse a judgment by default for any error for which an Appellate Court might reverse it. The object of the Legislature was to save the parties the delay and costs of an appeal to correct such irregularities and formal errors ; errors which seldom affect the merits of the controversy, and which would have been corrected at once by the court if pointed out. The case

of a motion comes within the reason of the statute, and I think the term *judgment by default* was intended to apply to all judgments where there was default of appearance. If the error be one for which the judgment might be reversed in an Appellate Court, no appeal, writ of error or supersedeas should be allowed until after motion to the court or judge has been made and overruled."

(*Preston* v. *Auditor*, 1 Call 471, and *Cunningham* v. *Mitchell*, 4 Rand. 189, were cited in that opinion.)

In the Code of Virginia, 1860, chap. 181 §§5 and 6, p. 743, are identically the same as sections 5 and 6 of chap. 134 of our Code. Hence, the interpretation and construction given by Judge Allen are applicable to the case before us. Upon the principles laid down by Judge Allen, it is plain that the judgment of November 8, 1875, against Smith, was a judgment by default. It is shown by the bill of exceptions that the defendant Smith had never appeared or made any defense to the proceedings had against him upon said motion, yet the judgment states : "This day came the parties, by their attorneys, and neither party requiring a jury, all matters of law and fact are submitted to the court, and the evidence adduced being heard, it is. therefore, considered by the court that the plaintiffs recover against the defendant, James Knight," &c. The defendant not having appeared and made defense, it was error for the judgment to state that he had appeared ; it was a false record, and might have been prejudicial to the defendant in after proceedings, either upon appeal, or in a court of equity, had he not moved to correct the judgment as directed by the statute. (*Preston* v. *Auditor*, and *Cunningham* v. *Mitchell*, *ante*.)

In *King* v. *Burdett et al.*, 12 W. Va. 688, this court held that "where the record shows '*that neither party required a jury, and the court is substituted in lieu of a jury to try the case*,' and the case was tried by the court, this is '*consent entered of record*,' within the meaning of section 35 of chapter 47, Acts 1872–3."

*(In the left margin:)*
1879
Special Term.

Smith & Atkinson
v.
Knight, Sheriff.

In this case as the judgment states, *"neither party re-quiring a jury, all matters of law and fact are submitted to the court,"* the defendant would in the Appellate Court have been concluded by the record, had he not moved in the court below to correct the record in that respect, because the record would have been a verity. I am therefore of opinion that the court did not err in setting aside the judgment upon the motion of the defendant. During the term, the record remains in the breast of the judges of the court, and in their remembrance, and therefore the the roll is alterable during that term as they shall direct. 1 Rob. Pr., old edition. For errors so palpable and serious, I think the court should *ex mero motu* correct the record, that it should verily state the truth.

As to the question of continuance : the general rule is, that a motion for a continuance is addressed to the sound discretion of the Court, under all the circumstances of the case. The bill of exceptions shows that the defendant, Knight, testified that he had no grounds for continuing the case, and no other excuse for delaying the collection of the debt except the existence of an order of the county court made July 2, 1875, staying all proceedings on the execution of May 13, 1875. The plaintiff introduced an order made by the county court January 1, 1874, designating the January and July terms of said court for the fiscal and police affairs of said county exclusively, except as to business within its general jurisdiction. The plaintiff claims, that as the July term was set apart for police and fiscal affairs of the county, the court had not at that term jurisdiction to make the restraining order set up by the defendant, and that said order was therefore a nullity.

Whatever may be the effect of that restraining order, or whether the county court had jurisdiction, or not, to make it at the July term, are questions that enter into the merits of the case, are questions not yet acted upon by the court below, the case never having been submitted on the merits by the defendant, are of course not

now before us, the Appellate Court will not consider now the questions on the merits. It may be true that the continuance was granted upon the motion of defendant, but it is evident, that the Court, having those questions touching the restraining order presented for the first time for its consideration, exercised a proper discretion in continuing the case.

The appeal should be dismissed as improvidently allowed, at the costs of the appellant.

THE OTHER JUDGES CONCURRED.

APPEAL DISMISSED.