# Richmond.

FECKHEIMER v. THE NATIONAL EXCHANGE BANK OF NORFOLK, VA.

May 1, 1884.

1. NATIONAL BANKS—*Loans on Stock Security.*—Section 5,201, U. S. revised statutes, prohibits banking associations from making loans upon security of shares of their own stock.

2. IDEM—*Idem—By-Laws diverso intuitu void.*—By-law, though notice thereof be endorsed on the certificate of stock, is void, which prohibits a stockholder who is indebted to bank from transferring his stock without the consent of the board of directors.

3. EQUITABLE JURISDICTION AND RELIEF.—*Specific Performance—Inadequate Remedy at Law—Case at Bar.*—L. & S. own shares of stock in N. E. bank of N., and failing, indebted to the bank, assign the shares to F., trustee. The certificates contain notice of such a by-law. Transfer could only be made upon the books of the bank, which refuses to allow said shares to be transferred to trustee. Latter files bill, asking that the bank be required to allow such transfer to be made on its books, and to issue new certificates therefor.

HELD:

    1. The remedy at law is not adequate, and it is not a case for compensation in damages, but for specific performance, which can only be enforced in a court of chancery.

    2. Trustee is entitled to have transferred for the purposes of the trust not only the shares, but all dividends that may be due on them.

4. CONSTRUCTION OF DEED.—A deed which conveys all the grantors' "property, real and personal," embraces and conveys all their shares of such bank stock.

Appeal from decree of corporation court of city of Norfolk, rendered 24th June, 1882, in the chancery cause wherein Martin S. Feckheimer is plaintiff and the National Exchange Bank of the city of Norfolk is defendant.

On 8th May, 1866, the firm of Lublin & Steiner, doing business in Norfolk and elsewhere, failing, conveyed by deed all their property, real and personal, to said Feckheimer as trustee, to secure certain debts, and to do whatever was necessary to effect the objects of the trust. Lublin & Steiner owned twenty shares of the stock of said bank, worth $100 a share. Trustee applied to the bank to transfer the shares to him, offering to surrender the old certificates upon the bank's issuing new ones to him. The bank refused on the ground that, by its by-laws no stock can be transferred by any stockholder who is liable to the bank either as principal debtor or otherwise, which provision is endorsed on the certificates when issued, and that Lublin & Steiner owed the bank about $6,000. The object of this suit was to compel the bank to transfer on its books the twenty shares to the trustee, and to issue to him new certificates therefor to be applied according to the provisions of the trust deed. At the hearing of the cause, the corporation court, considering that the plaintiff, Feckheimer, had not made a case meet for the specific relief asked for in his bill, refused to compel the defendant bank to allow the transfer on its books of the twenty shares of stock to the plaintiff, and dismissed his bill, and the latter appealed to this court.

*Harmanson & Heath* and *Sharp & Hughes*, for the appellant.

*Wm. H. C. Ellis*, for the appellee.

LACY, J., delivered the opinion of the court:

In the argument here the counsel for the appellee insists that the bank was entitled to hold the stock and to refuse its transfer until its debts due by the firm of Lublin & Steiner had been paid and satisfied; and further, that however that might be, there was no jusisdiction in equity in the case, that the remedy of the plaintiff was adequate at law, &c.

The first proposition has been well settled by recent decisions of the supreme court of the United States. The 36th section of the national banking act, approved June 3d, 1864 (section 5,201 U. S. Rev. Stat.), under which act the said bank was organized, provides: "That no association shall make any loan or discount on the security of the shares of its own capital stock, nor be the purchaser or holder of any such stock, unless such security or purchase shall be necessary to prevent loss on a debt previously contracted in good faith, and stock so purchased or acquired shall, within six months from the time of its purchase, be sold or disposed of at public or private sale; in default thereof a receiver may be appointed to close up the business of the association, according to the provisions of the act." In passing upon this question and construing this section, the supreme court of the United States held in a recent case that these associations are expressly prohibited from making any loan or discount on the security of the shares of their own capital stock. And so marked is the policy of congress on this subject that it does not allow a bank to become the purchaser or holder of its shares at all, unless absolutely necessary to prevent loss on a debt previously contracted in good faith, and not then for a longer period than six months. It is easy to see, that if the power were given to loan money on the security of its shares, it would imply also the power to become the owner of those shares, and this congress intended to guard against. These institutions were created to subserve public purposes, and not the mere private interests of the stockholders. And in no better way could this object be attained than in placing shareholders in their pecuniary dealings with the bank on the same footing with other customers.

Whatever may have been the reason which induced the action of congress in providing thus, the provision is plain and unambiguous, in the law, and binding on all associations organized thereunder.

The stock cannot be pledged at the time of the loan; the bank

can acquire no lien upon it by express agreement at the time of the loan, nor can the bank so enact in its by-laws as to make it liable for a debt due the bank.

In this case the stock was never pledged by the debtors in question, but the certificates of stock containing on their face a provision that if the holder be liable to the bank either as principal or otherwise, the consent of the board of directors should first be obtained before the transfer could be made. The bank relied upon this stipulation taken from their by-laws to enable it to subject the stock to its debt, but the provision contained in the by-laws is in contravention of the laws of congress and is therefore void, and so far as it may imply an express agreement between the bank and its shareholder, to that effect, it is void, as against public policy, and in its inception was a violation of law, as was held by the supreme court of the United States in *Bank* v. *Lanier*, 11 Wall. 369; see also *Bullard* v. *Bank*, 18 Wall. 589.

As to the second point, that the proper remedy of the appellant was a suit for damages, and that a court of chancery is without jurisdiction, that is, that the subject-matter of the bill is not properly cognizable in a court of chancery, but that the remedy is at law, and the party to be compensated in damages.

The bill asks that the said bank may be required to allow such transfer to the plaintiff of the said twenty shares on the books of the said bank, and to issue a new certificate therefor; that the bank may be compelled to open its transfer books and permit the plaintiff to transfer the stock.

By the by-laws of the bank such transfer could only be made upon the books of the bank.

In the case of the *Mechanics Bank of Alexandria* v. *Seton*, 1 Peters, 299, the supreme court said: " Although it might be the duty of the bank to permit such transfer, it would be difficult to sustain an action at law for refusing to open its books and permit the transfer. Nor have the appellants shown such a claim to the stock as to authorize the court to turn

the appellees round to their remedy at law against Lynn, admitting they might have it.

" At all events the remedy at law is not clear and perfect; and it is not a case for compensation in damages, but for the specific performance, which can only be enforced in a court of chancery." In that case, as we have seen, the suit was not for a specific performance of any express contract whatever entered into with the bank.

Equity has jurisdiction in cases of recognized rights, when a plain, adequate and complete remedy cannot be had in the courts of common law. The remedy must be plain; for if it be doubtful and obscure at law, equity will assert a jurisdiction. It must be adequate; for if at law it falls short of what a party is entitled to, that founds a jurisdiction in equity. And it must be complete; that is, it must attain the full end and justice of the case. It must reach the whole mischief, and secure the whole right of the party in a perfect manner, at the present time and in the future, otherwise equity will interfere and give such relief and aid as the particular case may require. The jurisdiction of a court of equity is therefore sometimes concurrent with the jurisdiction of a court of law; it is sometimes exclusive of it, and it is sometimes auxiliary to it. The appellant in this case has the right to have the stock in question transferred, to be applied according to the trust, in order that he may make available, and turn to the benefit of the trust any increase in value, not only of the stock itself, but of all dividends which may be due on it. The jurisdiction of the chancery court upon this subject has been often upheld by the courts of other states, and by the supreme court of the United States, and should no longer be questioned.

In the case of the *Telegraph Company* v. *Davenport*, 97 U. S. R. 369, this jurisdiction was maintained; and by decree entered in that cause the bank was compelled to replace the stock on the books of the company, to issue certificates, and pay dividends accrued since its wrongful transfer. That the trust

deed in question does not convey this stock cannot be maintained, it is clearly included in the general terms of the deed.

In the case of *Bullard* v. *Bank*, 18 Wall. 589, the assignment was merely the usual one to an assignee in bankruptcy of all the debtor's estate, and it was held to pass the stock in that case, and the point in question was not raised. Under the terms of the deed the stock was included. See the case of *Griffin, &c.*, v. *Macauley's Adm'r*, reported in 7 Gratt. 476, and the case of *Mundy* v. *Vawter & others, &c.*, 3 Gratt. 518. While the plaintiff in this case does not come into the court to seek the specific enforcement of any express contract with the bank, but seeks to compel the bank to transfer this stock on its books, and to issue to him new certificates of stock, and account for and pay over accrued dividends on the same; upon a well settled construction of the law in question, he claims what he is clearly entitled to, and we are not able to perceive that these objects might be attained at law, or that the appellant could be compensated in damages, if the jurisdiction of the chancery courts on this subject could now be held to be an open question, which we do not consider in view of the decided cases to be so.

The corporation court erred in its decree dismissing the bill of the plaintiffs, and the same must be reversed and annulled.

DECREE REVERSED.